UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID PLATA, | ) | 1:08-CV-01356 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| CALIFORNIA BOARD OF PAROLE HEARINGS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

David Plata ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a conviction in 1996 conviction for attempted murder with a firearm sentence enhancement. (Pet. at 2). Petitioner entered a plea of *nolo contendere* and received an indeterminate life sentence. (Pet. at 2).

Petitioner does not challenge his conviction in this action; rather, Petitioner contends that the California Board of Parole Hearings (the "Board"), whom he appeared before in March 2007, for a parole consideration hearing violated his constitutional rights when they denied him parole. (Pet. at 5).

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. A). The Los

Angeles County Superior Court issued a reasoned opinion rejecting Petitioner's claims.  (*See* Answer Ex. B).

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court.  (Answer Exs. C, E).  The California Court of Appeal and Supreme Court issued summary denials of the petitions.  (*See* Answer Ex. D, F).

On September 11, 2008, Petitioner filed the instant federal petition for writ of habeas corpus, alleging two grounds for relief.

Respondent filed a response to the petition on January 23, 2009.  Respondent admits that Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 3).  Petitioner filed a reply to the Respondent's answer on February 10, 2009.

## **FACTUAL BACKGROUND**

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's decision was objectively unreasonable.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense which had been taken from the probation officer's report and which Petitioner admits is an accurate representation of the facts. (Pet. Ex. E at 9-11).  As stated, the commitment offense occurred when Petitioner lured several companions and the victim to a local park with the pretext of getting high on marijuana. (Id. at 12).  In fact, Petitioner went to the park with the intent and plan to kill the victim. (Id. at 11-12).  Petitioner admitted to having planned the attempted murder for the past year and had brought along a gun to follow through with his plan. (Id. at 11-12, 14-15).  Petitioner admits that he was motivated by the belief that the victim had turned him in regarding his previous criminal misconduct and a desire to gain some notoriety among his friends. (Id. at 12-13, 19-20).  After luring the victim to the park, Petitioner walked with the victim and his companions for some distance before shooting the victim three times and walking away. (Id. at 10, 52).  Petitioner went about twenty feet before hearing the victim cry out for help. (Id. at 51).  Petitioner then went back where the victim was lying on his back and fired two more shots at the victim. (Id. at 10-11, 51).  Petitioner then escaped from the scene of the crime.   Despite having been shot five times, the victim survived.

(Id. at 52).

# DISCUSSION

## I. Jurisdiction and Venue

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner initiated this action and the denial of parole occurred when Petitioner had been incarcerated at Avenal State Prison, which is located in Kings County. (Pet. at 2). Kings County, falls within this Court's judicial district. 28 U.S.C. § 84(b). Thus, the Court has jurisdiction over Petitioner's claims and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

## II. ADEPA Standard of Review

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

\\\

\\\

U.S. District Court
E. D. California

3

1   Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

\\\

\\\

1    Petitioner bears the burden of establishing that the State court's decision is contrary to or
2 involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,
3 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth
4 Circuit precedent remains relevant persuasive authority in determining whether a State court decision
5 is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*
6 *Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

7    AEDPA requires that a federal habeas court give considerable deference to State court's
8 decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).
9 Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v.*
10 *Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537
11 U.S. 1149 (2003).

12    The initial step in applying AEDPA's standards is to "identify the state court decision that is
13 appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more
14 than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
15 reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that
16 later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
17 ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that
18 federal review is not barred by a State procedural ruling, "the question of which state court decision
19 last 'explained' the reasons for judgement is therefore relevant only for purposes of determining
20 whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly
21 established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal
22 habeas court looks through ambiguous or unexplained State court decisions to the last reasoned
23 decision in order to determine whether that decision was contrary to or an unreasonable application
24 of clearly established federal law. *Id*.

25    Here, the Los Angeles County Superior Court, the California Court of Appeal, and the
26 California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. B, D, F). As the
27 California Court of Appeal and California Supreme Court issued summary denials of Petitioner's
28 claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that

of the Los Angeles County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claim

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). Petitioner contends that the Board's decision deprived him of due process of the law as the decision was not supported by some evidence–specifically, Petitioner argues that: (1) the Board's classification of his crime as dispassionate and calculated is misguided as those criterion apply only to murder cases; (2) the Board's reliance on a previous psychological report was erroneous as there is a more current report; and (3) the reliance on past criminal misconduct and other unchanging factor violated his right to due process of the law. (Pet. at 5-6).

#### *A.     Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 3-4). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of

a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (*Id*. at 5). Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has further held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review

applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole.

The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

\\\

\\\

\\\

### B. State Court Decision

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the "some evidence" standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court concluded that there was some evidence to support the Board's finding that Petitioner "presents an unreasonable risk of danger to society." (Answer Ex. B at 1). The Superior Court's conclusion rested primarily on the evidence that the crime was committed in a dispassionate and calculated manner as well as Petitioner's previous criminal record. (Id).

The California Supreme Court recently held that even where the commitment offense was particularly egregious, reliance on this immutable factor may violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). The *Lawrence* court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226. Similarly, the Ninth Circuit has previously warned that continued reliance on immutable factors may not comport with the protections of the Due Process Clause. *See Irons*, 505 F.3d at 854; *Biggs*, 334 F.3d at 917.

However, the *Lawrence* court noted that there were some circumstances where reliance on a commitment offense would comport with due process, such as where the conviction offense was so heinous, atrocious, or cruel that the gravity of the crime itself established current dangerousness. *In re Lawrence*, 44 Cal.4th at 1228. Furthermore, the *Lawrence* court observed that a discipline-free record while incarcerated does not automatically render the commitment offense unpredictive of current dangerousness. *Id.* (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in concluding that lack of insight into the commitment offense rendered aggravating factor of the crime probative of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary or capricious despite an inmate's discipline-free record during

1  incarceration).

2  Here, the State Superior Court found, pursuant to Title 15 of the California Code of
3  Regulations section 2402(c)(1)(B), that the crime was committed in a dispassionate and calculated
4  manner evidencing dangerousness. (Answer Ex. B). The State court noted that Petitioner essentially
5  tried to execute the victim for a trivial motive. (Id. at 1). In Ground Two, Petitioner contends that
6  the Superior Court's decision and the Board's application of this fact to his case is erroneous as that
7  section of the California Code of Regulations does not apply to attempted murders. (Pet. at 10-11).
8  In the alternative, Petitioner contends that while his crime was horrible, it doesnot evidence
9  dangerousness.[1]

10  The Court finds Petitioner's first argument misguided. In support of his contention,
11  Petitioner cites to the language of section 2402(c)(1)(B), which states whether"[t]he offense was
12  carried out in a dispassionate and calculated manner, such as an execution-style murder," is a factor
13  to be considered in determining that " [t]he prisoner committed the offense in an especially heinous,
14  atrocious or cruel manner." A common sense reading of the regulation would indicate that an
15  execution style murder is an example of this factor and does not limit consideration of this factor to
16  murders. This is especially true as the legislature used the generic term offense rather than murder.
17  Petitioner fails to offer any supporting authority for this proposition and the Court's review has
18  found no caselaw limiting consideration of this regulation to murders rather than attempted murders.
19  *See In re Caswell*, 92 Cal.App.4th 1017, 1026 (Cal. Ct. App. 2001) (applying§ 2402 to denial of
20  parole where commitment offense was attempted murder); *see also In re Lee*, 143 Cal.App.4th
21  1400, 1409-1411 (Cal. Ct. App. 2006) (applying regulation to denial of parole where commitment
22  offense was attempted murder as well as murder).
23  \\\
24  \\\
25  \\\
26
27
28
[1] As Petitioner argues in a separate ground for relief against the use of immutable factors, such as his commitment offense and his previous criminal misconduct, the Court discuss the use of the commitment offense to evidence *current* dangerousness *infra*.

1    Petitioner's second argument, that his crime does not evidence dangerousness, is likewise
2 unpersuasive. Petitioner indirectly relies on *In re Smith*, 114 Cal.App.4th 343, 366-367 (Cal. Ct.
3 App. 2003), and *In re Scott*, 119 Cal.App.4th 871, 891-892 (Cal. Ct. App. 2004), in arguing that his
4 commitment offense did not exceed the minimum necessary for the crime. The commitment
5 offenses in both *Scott* and *Smith* were the byproducts of emotional confrontations and were spur of
6 the moment shootings in which the perpetrators shot their victims three times. The Court initially
7 notes that the Superior Court in Petitioner's case relied on the calculated and dispassionate manner in
8 which Petitioner committed the crime to find that the crime evidenced dangerousness. (Answer Ex.
9 B at 1) (citing Cal. Code Regs., tit. 15, § 2402(c)(1)(B)). This is distinct from *Scott* and *Smith*,
10 where the appellate courts's reasoned that section 2402(c)(1)(D) applied to all murders and since
11 parole is the rule rather than the exception, this section must be read to require more than the
12 minimum necessary to convict for attempted murder. Here, Petitioner's actions are easily more than
13 the minimum necessary and is easily more heinous that the crimes in *Scott* and *Smith* as Petitioner
14 planned to kill the victim for over a year, used false pretenses to lure the victim to the scene, used the
15 same false pretenses to lure the audience he wanted to impress to the scene of the crime, and shot the
16 victim three times before going back and firing several more shots at the victim. Such conduct
17 evidences dangerousness as the crime was carried out in a most dispassionate and calculated manner.
18    Thus, the only remaining question is whether Petitioner's crime, when combined with the
19 other factors cited by the Board, constitutes some evidence of *current* dangerousness. *In re*
20 *Lawrence*, 44 Cal.4th at 1227 (stating that "[t]he relevant determination for the Board and the
21 Governor *is, and always has been*, an individualized assessment of the continuing danger and risk to
22 public safety posed by the inmate") (emphasis added); *see also Irons*, 505 F.3d at 851 (some
23 evidence inquiry is framed by California's laws governing parole suitability). While relying solely
24 on the commitment offense is generally questionable, the Court notes the commitment offense here
25 may qualify under the exception articulated in *Lawrence* for crimes that are "so heinous, atrocious,
26 or cruel that the gravity of the crime itself established current dangerousness." *Lawrence*, 44 Cal.4th
27 at 1228. Here, Petitioner tried to execute a fifteen year old victim in order to show off in front of his
28 friends. Petitioner lured the victim and his friends to the crime scene under false pretenses. Further,

the Court notes that the relatively short period of time spanning the crime's commission and the parole hearing, eleven years, makes this crime more probative of Petitioner's current dangerousness than the crime in *Lawrence*.

Additionally, the Board's consideration of factors outside of the commitment offense also compel the conclusion that Petitioner's rights were not violated by the Board's denial of parole. Specifically, the Board relied on the 2004 psychological evaluation and Petitioner's previous criminal misconduct. Petitioner challenges the Board's reliance on these factors, arguing that reliance on the psychological evaluation is erroneous as it is not the most recent report and that reliance on an immutable factor violates his due process rights. (Pet. at 8-10, 13-14). Petitioner also argues that the Board failed to consider a mitigating circumstances–namely, Petitioner's age when he committed the crime.

The Court initially notes that "[t]he requirements of due process are satisfied if some evidence supports the [Board's] decision...Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. *See Sass*, 461 F.3d at 1128 (citing *Hill*, 472 U.S. at 455-456). Thus, the Court will not re-weigh the evidence in this case in considering the mitigating factor advanced by Petitioner. Indeed, the Court notes that the regulations set forth by the California legislature uses age as a factor in mitigation where "[t]he prisoner's *present* age reduces the probability or recidivism." Cal. Code Regs., tit. 15, § 2402(d)(7). Here, Petitioner was in his mid twenties when the hearing occurred, thus not qualifying for this mitigating factor. Likewise, Petitioner's attack on the Board's use of his previous psychological evaluation is unpersuasive as the Board may rely on "[a]ll relevant, reliable information available to the panel." During the hearing, the Board considered both the psychological report conducted in 2007 and the report conducted in 2004. (Pet. Ex. E at 43-50). The Board found certain portions of the 2004 report supported the finding that Petitioner was unsuitable for parole. In passages read into the record by the Board, the psychologist commented that a prediction of dangerousness is "more

problematic" considering Petitioner's youth at the time of the hearing. (Id. at 43). The report further stated that the premeditated nature of the crime and the long period of the time Petitioner held onto his motive for the crime "suggest a potentially higher than average risk for violence." (Id). While the new report ultimately concludes that Petitioner presented a low likelihood of becoming involved in a violent offense if released, the report also noted that Petitioner "has a history of antisocial personality traits." (Id. at 46). Moreover, the Board's decision to give more weight to the previous evaluation rather than the current report cannot be questioned by this Court.

The Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). The 2004 psychological evaluation and the commitment offense constitute the minimal necessary to ensure that the record is not so devoid of evidence.[2] Thus, the Court finds that Petitioner's constitutional rights were not violated.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to

---

[2] As the report and the commitment offense constitute sufficient evidence to satisfy Petitioner's right to due process of the law, the Court does not consider the Board's use of Petitioner's previous criminal misconduct.

1 | appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3 | IT IS SO ORDERED.

4 | **Dated:     October 23, 2009**              **/s/ John M. Dixon**
                                                  UNITED STATES MAGISTRATE JUDGE